| | |
|---|---|
| 1 | Gino D. Serpe (SBN 160238) |
| | THE LAW OFFICE OF GINO D. SERPE |
| 2 | gino@serpelawfirm.com |
| | The Koll Center |
| 3 | 501 West Broadway, Suite 800 |
| 4 | San Diego, California 92101 |
| | Telephone: (619) 702-2907 |
| 5 | Facsimile: (619) 702-2908 |
| 6 | |
| 7 | COHEN & GRESSER LLP |
| | SANDRA C. McCALLION |
| 8 | smccallion@cohengresser.com |
| | THOMAS E. BEZANSON |
| 9 | tbezanson@cohengresser.com |
| | SEUNG C. SOHN |
| 10 | scsohn@cohengresser.com |
| | MELANIE A. GROSSMAN |
| 11 | mgrossman@cohengresser.com |
| 12 | 800 Third Avenue, 21st Floor |
| | New York, New York 10022 |
| 13 | Telephone: (212) 957-7600 |
| | Facsimile: (212) 957-4514 |
| 14 | |
| 15 | *Attorneys for Defendant* |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRY HORVATH, JEREMY FORSYTHE, RONALD JOHNSON, and FRED MONTGOMERY, individually and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> vs. <br><br> LG ELECTRONICS MOBILECOMM U.S.A., INC., a California Corporation; <br><br> Defendant. | Case No. 3:11-CV-01576-H-(MLH) (RBB) <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANT LG ELECTRONICS MOBILECOMM U.S.A., INC.'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Judge: Hon. Marilyn L. Huff <br><br> Courtroom: 13 <br><br> Date: February 13, 2012 <br><br> Time: 10:30 a.m. |

Defendant LG Electronics Mobilecomm U.S.A., Inc. ("LGEMU" or "Defendant") submits this Reply Memorandum of Points and Authorities in Further Support of its Motion to Dismiss the First Amended Class Action Complaint ("FAC") of Plaintiffs Terry Horvath, Jeremy Forsythe, Ronald Johnson, and Fred Montgomery ("Plaintiffs").

**Preliminary Statement**

In its Motion to Dismiss ("Motion" or "MTD"), LGEMU showed that the Court should dismiss each of the FAC's warranty, statutory and common count claims both for failures of pleading as well as a matter of law. Rather than meeting these arguments head on, Plaintiffs resort to hyperbole, add new *"facts"* through their opposition brief ("Opposition" or "Opp."), and mischaracterize the governing law. They compare the purported defects in smartphones to a *bed* containing mold and an unsafe *vehicle*, Opp. 10-11, and emphatically allege that the G2X phone "should *never* have been released to the public." Opp. at 1-2 (emphasis in original).

Plaintiffs allege for the first time in their brief that there were complaints about the purported "international version of [G2X]" before the U.S release. Opp. at 17. In addition, apparently recognizing that the FAC as pled is legally deficient, the Opposition now also asserts that it overcomes the legal bars to Plaintiffs' claims because (1) the defect manifests differently in different users' screens so this is not a design defect that the warranty disclaims; and (2) the purported "screen-bleed" defect interferes with customers' ability to see numbers and texts so the G2X is purportedly unmerchantable. These new assertions were *not* alleged in the FAC and should therefore be disregarded. They do not save the FAC in any event.

Moreover, the law in this Circuit bars Plaintiffs' claims. The authority cited in the Opposition – which relies primarily on a single case litigated by plaintiffs' counsel and mischaracterizes others – does not hold otherwise. For all the reasons discussed in the Motion and below, LGEMU respectfully asks the Court to dismiss the FAC with prejudice.

**I.    THERE IS NO VIABLE EXPRESS WARRANTY CLAIM.**

LGEMU's Motion asserted two reasons the FAC does not state a claim for breach of express warranty: (1) the FAC asserts a claim for a defect that is not covered by the warranty;

(2) Plaintiffs have not alleged a breach. Neither fatal problem is cured by Plaintiffs' Opposition.[1]

### A. The FAC Alleges A Design Defect That Was Disclaimed.

LGEMU's Motion showed the Limited Warranty governing Plaintiffs' G2X phones is expressly limited to defects in "material and workmanship." *See* MTD Ex. A. Plaintiffs could not deny this in their Opposition, thus, they asserted that the Ninth Circuit "has held that design defects are covered by the language of 'materials and workmanship.'"[2] *See* Opp. at 4 (citing *Dickerson v. Elextrolux Home Prods., Inc.*, No. CV 10-5163-R, 2011 WL 831916, *1 (C.D. Cal. Feb. 3, 2011)). But *Dickerson* is anomalous in that the vast majority of courts in this Circuit agree that a product warranty covering defects in material and workmanship does *not* include design defects. *See* MTD at 8-10 (citing cases).

Moreover, the underlying Ninth Circuit case that *Dickerson* relied upon, *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1341 (9th Cir. 1989), does not address product warranties and does not so hold. Instead, *Tzung* concerned an insurance policy exclusion for "faulty workmanship," holding that losses caused by defects in the design and construction of a building were excluded. *Id.* at 1341. *Tzung* therefore does not support Plaintiffs' assertion.

Lacking any real legal support, Plaintiffs argue that, by inserting the word "manufacturing" in the FAC, and quoting consumer complaints that use that word, they have asserted a claim for breach of materials and workmanship. Opp. at 3-4. Logic dictates

---

[1] LGEMU also argued that the FAC was deficient because Plaintiffs failed to allege that they saw or relied on the Limited Warranty before purchase. Even if reliance is no longer required in California, it is nonetheless required in Texas, Oregon, and Florida. *See* MTD 10-11.

[2] Plaintiffs rely on *Wershba v. Apple Computer, Inc.*, 110 Cal. Rptr. 2d 145 (Cal. Dist. Ct. App. 2001), to support application of California law. LGEMU does not concede this point. Indeed, the California Supreme Court recently distinguished *Wershba* in *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 n.10 (Cal. 2011), on the basis that "the unlawful conduct that formed the basis of the out-of-state plaintiffs' claims [in *Wershba*] . . . occurred in California." Here, the alleged unlawful conduct is LGEMU's failure to perform its warranty obligations. As the FAC makes clear, each of the Plaintiffs purchased phones and sought repairs and warranty service from third-parties located in their own home states. Thus, LGEMU's conduct in California is largely irrelevant to the out-of-state Plaintiffs' claims. *See, e.g. In re Hitachi Television Optical Block Cases*, No. 08cv1746, 2011 W 9403, *7-*10 (S.D. Cal. Jan. 3, 2011) (denying certification of nationwide class where, *inter alia*, California law could not be applied to claims primarily based on warranty service provided by third parties in plaintiffs' home states).

otherwise. As shown in LGEMU's Motion, the only reasonable inference from the FAC is that it alleges a design defect.[3] *See* MTD at 8-10.

Indeed Plaintiffs' line of legal authority does not change this result. In *Toyota I*, the court held that plaintiffs adequately alleged a manufacturing and/or workmanship defect where they pled, *inter alia,* that Toyota "fail[ed] to design, assemble and manufacture the ETCS-i wiring harnesses in such a way as to prevent mechanical and environmental stresses from causing various shorts and faults . . . ." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.,* 754 F. Supp. 2d 1145, 1181-82 (C.D. Cal. 2010). In a parallel action decided weeks later, that same court *dismissed* breach of warranty claims brought by other plaintiffs who "ma[d]e only conclusory allegations regarding non-design defects that [were] insufficient to state an express warranty claim . . . ." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prod. Liability Litig.,* 754 F. Supp. 2d 1208, 1124 (C.D. Cal. 2010). The court dismissed those claims on the ground that plaintiffs had alleged design effects.[4] *Id.* As in *Toyota II*, the FAC's allegation that the G2X phone suffers from a "design and/or manufacturing defect," FAC ¶ 2, is insufficient.[5]

Plaintiffs have alleged a design defect. The warranty expressly does *not* cover design defects. Thus, Plaintiffs' breach of express warranty claim should be dismissed with prejudice.

---

[3] Plaintiffs should not be permitted to, on the one hand, argue that the G2X phone suffers from an "inherent" design defect such that it "should *never* have been released to the public," Opp. at 1, and, on the other, argue that the G2X phone suffers from defects in manufacturing or workmanship that manifest in different ways for different users. Opp. at 3. Moreover, notably, the latter allegation was not made anywhere in the FAC and should therefore be disregarded. *See, e.g., Pickern v. Pier 1 Imports (U.S.), Inc.,* 457 F.3d 963, 968-69 (9th Cir. 2006).
[4] One plaintiff alleged that the vehicle "failed to conform with its manufacturing specifications." *Id.* The other alleged that the vehicle was "defectively ... manufactured." *Id.*
[5] *In re Sony Vaio Computer Trackpad Litig.*, No. 09cv2109, 2010 WL 4262191 (S.D. Cal. Oct. 28, 2010), a case litigated by Plaintiffs' counsel and cited by Plaintiffs extensively in their reply, is inapposite on this point. *Sony* did not address the design defect/workmanship defect distinction. Rather, that case addressed Sony's Limited Warranty, which covered defects in hardware but not software. *See* Sony Electronics Inc.'s Motion to Dismiss at 3, *Sony*, 2010 WL 2127195 (S.D. Cal. Apr. 21, 2010). Sony argued that Plaintiffs failed to allege covered defects in hardware although the complaint specifically alleged that the laptops contained "defective trackpad input devices" and a defective "trackpad component." *See* Complaint at ¶ 3, *Sony*, 2010 WL 2127264 (Mar. 22, 2010).

### B. Plaintiffs Have Not Alleged A Breach.

As LGEMU discussed in its Motion, where a warranty explicitly sets forth the duties and obligations of the warrantor with respect to non-conforming products, a plaintiff must allege that the warrantor failed to reasonably perform those duties and obligations to state a claim for breach of the warranty. Thus, to assert a breach of warranty claim, these Plaintiffs needed to give LGEMU the opportunity to cure. They did not. *See* MTD at 11-14.

Plaintiffs' legal position is incorrect as to the opportunity to cure requirement for their express warranty claims. Plaintiffs rely on Song-Beverly Act ("SBA") cases to argue that T-Mobile's repair attempts and those of the retailers from which Plaintiffs Montgomery and Johnson purchased their phones satisfy the requirement. Opp. at 8-9. But the SBA independently requires manufacturers that issue written warranties to maintain authorized repair facilities in California.[6] CAL. CIV. CODE §1793.2. There is no similar requirement under the UCC because liability under that statute is based on the warranty's express terms.

LGEMU's Limited Warranty expressly requires under the heading "HOW TO GET WARRANTY SERVICE" that customers must "call or write for the location of the LG authorized service center nearest you and for the procedures for obtaining warranty claims." MTD Ex. A (Limited Warranty) § 5. Plaintiffs response – that "by merely obtaining the location of the nearest service center – without any notice to LG – customers may obtain warranty service" – is nonsensical. Opp. at 7. By requiring the customer to call LGEMU to obtain the location of the nearest authorized service center, the warranty quite obviously contemplates that the customer must send their phone to that service center "to get warranty service." MTD Ex. A (Limited Warranty) § 5. Further, the Limited Warranty explicitly states that it does *not* cover instances in which "[t]he Customer Service Department at LG was not notified by consumer of the alleged defect . . . during the applicable . . . warranty period." *Id.*

The FAC does not adequately allege that LGEMU failed or refused to fulfill its Warranty obligations to repair or replace Plaintiffs' phones. Because Plaintiffs failed to meet this threshold, none of them can state a claim for breach. *See* MTD at 11-14; *see also Taliaferro v.*

---

[6] Only Plaintiff Horvath has standing to pursue a claim under the SBA. FAC ¶ 117.

*Samsung Telecomm. Am., LLC,* No. 3:11-CV-1119, 2012 WL 169704, *3 (N.D. Tex. Jan 19, 2012) (dismissing claim for breach of express warranty under California law in identical case brought by Plaintiffs' counsel against Samsung).[7]

## II.   THERE IS NO VIABLE IMPLIED WARRANTY CLAIM.

LGEMU's Motion asserted two flaws in Plaintiffs' implied warranty claim: lack of required privity and lack of a covered defect. MTD at 14-17. Plaintiffs' Opposition overcomes neither problem.

### A.   There Is No Privity.

As to privity, Plaintiffs concede that California requires them to establish privity of contract to state a claim for breach of implied warranty. Opp. at 9. But Plaintiffs assert that an exception applies here because LG intends for its authorized retailers to resell the phones to consumers, which in turn makes Plaintiffs the intended third party beneficiaries of the implied warranties between LG and its retailers. *Id.* at 10. They then assert that the "vast weight of authority" permits them simply to identify the possible existence of such a contract to defeat the privity bar. *Id.* n.4.

In *Sony*, however, a case upon which Plaintiffs rely extensively, plaintiffs *did* plead the existence of a specific contract between Sony and Best Buy, both defendants in that case. 2010 WL 4262191 at *3. In addition, at least two more cases Plaintiffs rely on dispute their intended beneficiary assertion. *See Dickerson*, 2011 WL 831916 at *2; *NVIDIA GPU Litig.*, No. C08-04312, 2009 WL 4573311, *6-*7 (N.D. Cal. Nov. 19, 2009). *Dickerson* dismissed implied warranty claims on lack of privity grounds although the complaint alleged, as Plaintiffs do here, that plaintiffs were "intended beneficiaries of an agreement between the manufacturer and retailers because the manufacturer . . . had knowledge that Plaintiffs were the end users . . . when Defendant entered into any and all sales contracts and subcontracts for the Washing Machines."[8]

---

[7] If, as Plaintiffs appear to contend, T-Mobile's obligations under its contracts with Plaintiffs somehow also bind LGEMU in such a way that they should be treated as one entity for liability purposes, *see* FAC ¶ 15, Plaintiffs' remedy is in arbitration, not this Court. *See, e.g., In re Apple & AT&TM Antitrust Litig.*, No. C 07-05152, 2011 WL 6018401 (N.D. Cal. Dec. 1, 2011) (granting motion to compel arbitration based on arbitration provision in cellular provider's contract where claims against provider and manufacturer were intertwined).

[8] *See* Complaint ¶¶ 152-154, *Dickerson v. Electrolux Home Prods. Inc.*, 2010 WL 4776990

*Dickerson*, 2011 WL 83191 at *2. *NVIDIA* also dismissed plaintiffs' implied warranty claims for failure to allege a specific contract to which they were a third party beneficiary. 2009 WL 4020104 at *6-*7.

As plaintiffs have failed to allege the existence of a contract for their benefit, their implied warranty claims should be dismissed for lack of privity.

### B.  The Alleged Defects Do Not Affect Merchantability.

As shown in LGEMU's Motion, the implied warranty claim fails for the additional reason that the alleged defects do not affect the merchantability of the product. MTD at 17-19. In arguing that a phone that intermittently freezes is not merchantable, Opp. at 10-12, Plaintiffs compare the phones with a bed containing mold and a car that smells, lurches, clanks and emits smoke. *Id.* at 11 (citation omitted). These defects – which relate to the *safety* of the product – and the defects Plaintiffs allegedly experienced with their phones, are not analogous.[9] The cases cited do not support Plaintiffs' assertion that Defendant's G2X is not merchantable.[10]

Failing legal support, Plaintiffs rely on faulty logic. They assert that, because they allegedly sought repair or replacement from their carriers, the phones *must* be unmerchantable. Opp. at 11-12. This is not so. A consumer may decide to return or replace a phone for any number of reasons particular to that customer if it does not meet expectations. The implied warranty of merchantability does not "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." *American Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 529 (Cal. Dist. Ct. App. 1995) (citations omitted). The FAC does not plausibly plead that the G2X failed to meet this standard.

---

(C.D. Cal. Aug. 31, 2010).
[9] Plaintiffs now assert that the "screen-bleed" defect "impact[s] consumers' ability to see, numbers, messages and images on the phone." Opp. at 12. The FAC does not make this allegation, and it is flatly contradicted by the FAC's allegation that the defect appears "when the display is dark or black" and "detrimentally affects consumers' viewing experience, especially when watching videos or playing games . . . ." FAC ¶¶ 35-36.
[10] Plaintiffs' do not successfully distinguish *Tietsworth v. Sears Roebuck & Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010). Opp. at 11-12. *Tietsworth* dismissed breach of implied warranty claims for washing machines that randomly stopped mid-cycle because plaintiffs did not claim the machines were unusable; they had to be replaced; or they had resort to other methods to clean their clothes. *Id.* at 1142-43. This "defect" is far more analogous to the alleged G2X issues than moldy beds and lurching automobiles.

## III. THERE IS NO VIABLE MAGNUSON-MOSS WARRANTY ACT CLAIM.

LGEMU argued in its Motion that the Magnuson-Moss Warranty Act ("MMWA") claim must fail because the FAC failed to state a claim for breach of express or implied warranty under state law. MTD at 19. Plaintiffs respond that the MMWA creates a *separate*, federal cause of action for breach of a written warranty. Opp. at 12-13. This is incorrect. Numerous courts in this Circuit have recognized that the [MMWA] does not expand the rights under state law warranty claims, and dismissal of the state law claims requires the same disposition with respect to an associated MMWA claim. *In re Sony Grand Wega, KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1101 (S.D. Cal. 2010).

To support their position, Plaintiffs cite to *Borchardt v. Mako Marine Int'l, Inc.*, No. 08-61199-CIV, 2011 WL 2084177 (S.D. Fla. May 24, 2011), in which a Florida court permitted a plaintiff to pursue a MMWA claim although its express warranty claim had failed for lack of vertical privity. But this same court in a second decision noted that the Act calls for application of state written and implied warranty law, *not creation of additional federal law* except in specific instances in which it expressly prescribes a regulating rule. *Borchardt v. Mako Marine Int'l, Inc.*, No. 08-6119, 2011 WL 2084177, *2 (S.D. Fla. Oct. 6, 2011). Thus, *Borchardt* later agreed with the interpretation of the MMWA's reach of other jurisdictions. In any event, *Borchardt* is not controlling.

## IV. THERE IS NO VIABLE CLRA CLAIM.

LGEMU argued that Plaintiffs' California Legal Remedies Act claim should fail because it sounds in fraud and is not adequately alleged. MTD at 20. In response, Plaintiffs assert that only allegations of active concealment – and not claims of nondisclosure – are subject to Rule 9(b). Opp. at 13-15 (citing *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097 (9th Cir. 2003)). They then assert that *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) "is not to the contrary." Opp. at 14 n.5. *Kearns*, however, explicitly overruled *Vess* on this point. *See Kearns* at 1126. The Ninth Circuit noted that after *Vess* was decided, the Supreme Court of California held that nondisclosure is a claim for misrepresentation in a cause of action for fraud. Thus "it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)." *Id.*

Plaintiffs' CLRA claim, whether described as one for nondisclosure or active concealment, is subject to and fails to meet Rule 9(b)'s particularity requirements. Specifically, the FAC fails because it does not adequately plead that LGEMU knew of the purported G2X defects before it released the phone. *See* MTD at 20-22. Plaintiffs tacitly concede this point in their Opposition by asking the Court to take judicial notice of complaints purportedly made about the "international version of [G2X]" in early April. Opp. at 17. These alleged complaints are nowhere mentioned in the FAC, so they are not properly before the Court. *See, e.g., Pickern,* 457 F.3d at 968-69. Nor can they be used on this motion for their truth. *See, e.g., In re Petco Animal Supplies Sec. Litig.,* No. 05-CV-0823, 2005 WL 5957816, *2 (S.D. Cal. Aug. 1, 2005) (Huff, J.) (noting that "[t]he district court must reject requests [for judicial notice] to the extent that parties seek to have the court accept as true the facts contained within public documents").

Further, the postings on LGEMU's web forum of which Plaintiffs ask the court to take judicial notice do not aid Plaintiffs. The only proposition the postings could possibly demonstrate is that, one week before LGEMU released the G2X, a purported LGEMU moderator received a complaint about the "international version of [G2X]" and passed it along to a U.S. team. Opp. at 17. This supposed "fact" does not support the inference Plaintiffs plainly seek, namely, that (1) LGEMU knew the "international version of [G2X]" was defective before sales commenced in the United States, (2) the international version is identical to the U.S. version or even used the same software or operating systems; or (3) the G2X itself was defective. Thus, because the postings do not support an inference that LGEMU was aware of any problem with the G2X phone before it was released, the postings do not save Plaintiffs' CLRA claim and it should be dismissed.[11]

### V. THERE IS NO VIABLE UCL CLAIM.

LGEMU's Motion argued that the FAC failed to allege that LGEMU's conduct was unlawful, unfair, or fraudulent for purposes of the UCL. MTD at 22-23. LGEMU's conduct cannot be considered "unlawful" because Plaintiffs have failed to allege any underlying claim

---

[11] Plaintiffs' CLRA claim is also subject to dismissal because Plaintiffs failed to file the affidavit of venue required by CAL. CIV. CODE § 1780(d).

for breach of warranty or violation of the CLRA. Plaintiffs' claim under the "unfair" prong is also insufficient because it is based on Plaintiffs' allegation that LGEMU failed to perform its warranty obligations. Plaintiffs have not adequately alleged a claim for breach of express or implied warranty, and therefore their UCL claim also fails. As discussed above, Plaintiffs have failed to plead fraud with the requisite specificity.

Plaintiffs respond by citing *Sony Vaio*, 2010 WL 4262191 at *5 and *NVIDIA*, 2009 WL 4020104 at *10, but each of these cases is distinguishable in that plaintiffs alleged a fraudulent omission and corresponding violation of the CLRA. Plaintiffs also come up with a new theory: that LGEMU's conduct was "unfair," because LGEMU "fail[ed] to use reasonable care to test its products prior to sale." Opp. at 22. This allegation is found nowhere in the FAC so should be disregarded. It also does not save Plaintiffs' UCL claim because common law negligence is an insufficient basis for liability under the unlawful prong of the UCL. *See Hartless v. Clorox Co.*, No. 06–CV–2705, 2007 WL 3245260, *5 (S.D. Cal. Nov. 2, 2007) (common-law claims cannot form the basis for a UCL claim). Plaintiffs have failed to allege that LGEMU's conduct was unlawful, unfair, or fraudulent, and therefore Plaintiffs' UCL claim should be dismissed.

## VI. THERE IS NO VIABLE SONG-BEVERLY ACT CLAIM.

LGEMU argued in its Motion that Plaintiff Horvath failed to state a claim for breach of the implied warranty of merchantability or breach of the Limited Warranty, which does not cover the defects Plaintiffs allege. Plaintiff Horvath also failed to deliver his phone to LGEMU's service and repair facility. MTD at 19-20 (citing CAL. CIV. CODE §1793.2).

Plaintiff Horvath asserts for the first time that LGEMU's primary repair facility is in Texas so he has a viable claim. Opp. at 24. Notably, he does not address LGEMU's central argument: he did not return the G2X *anywhere*. Indeed, Horvath admits that when he contacted Defendant to inquire about repair or replacement for his G2X phone, Defendant informed him that he would have to mail his phone to LGEMU for service or replacement. Opp. at 24. Horvath concedes that he chose not to do so. FAC ¶¶ 49-50. Because Horvath cannot contest that he flatly refused to provide Defendant with even one, let alone a "reasonable number" of attempts to repair his phone, his SBA claim fails and cannot be cured by amendment.

## VII. THERE IS NO VIABLE COMMON COUNT CLAIM.

LGEMU's Motion explained that Plaintiffs cannot assert common counts as a matter of law. Plaintiffs nonetheless argue that their assumpsit claim is permitted because it is in the alternative to the breach of express warranty claims. Opp. at 24-25. Plaintiffs' own authority, however, demonstrates that they cannot assert such a claim in the alternative where based on the same allegations as a breach of contract claim. *See, e.g., Mike Nelson Co., Inc. v. Hathaway*, No. 05-0208, 2005 WL 2179310, *5 (E.D. Cal. Sept. 8, 2005). Additionally, "[w]hen a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable." *McBride v. Bouthton*, 123 Cal. App. 4th 379, 394 (Cal. Dist. Ct. App. 2004). Here, Plaintiffs do not deny that their common count claim is premised on the same allegations as their breach of warranty, UCL, and CLRA claims. The common count claim should be dismissed.

## CONCLUSION

For the reasons set forth herein and in LGEMU's Motion to Dismiss, LGEMU respectfully requests that the Court dismiss the First Amended Complaint without leave to amend.

Dated: February 6, 2012

By:   /s/Sandra C. McCallion
Sandra C. McCallion
smccallion@cohengresser.com
Thomas E. Bezanson
tbezanson@cohengresser.com
Seung C. Sohn
scsohn@cohengresser.com
Melanie A. Grossman
mgrossman@cohengresser.com
COHEN & GRESSER LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 957-7600
Facsimile: (212) 957-4514

| | |
|---|---|
| 1 | By: /s/Gino D. Serpe |
| 2 | Gino D. Serpe (SBN No. 160238)<br>THE LAW OFFICE OF GINO D. SERPE |
| 3 | gino@serpelawfirm.com<br>The Koll Center |
| 4 | 501 West Broadway, Suite 800<br>San Diego, CA 92101 |
| 5 | Telephone: (619) 702-2907<br>Facsimile: (619) 702-2908 |