**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TERRY HORVATH, JEREMY FORSYTHE, RONALD JOHNSON, and FRED MONTGOMERY, individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS MOBILECOMM U.S.A., INC., a California corporation;<br><br>Defendant. | Case No. 3:11-cv-01576-H<br><br>**ORDER APPROVING STIPULATION FOR DOCUMENT PRODUCTION PROTOCOL [DOC. NO. 61]** |

---
1
ORDER APPROVING STIPULATION FOR DOCUMENT PRODUCTION PROTOCOL

**Document Production Protocol & Order**

**A.     Scope**

1.     General. The procedures and protocols outlined herein govern the production of electronically stored information ("ESI") and paper documents by the Parties during this litigation's pendency. The production formats for other materials will be addressed by the parties after a meet and confer regarding the specific item or category of items. Nothing in this protocol will be interpreted to require disclosure of documents or information protected from disclosure by the attorney-client privilege or work-product product doctrine.

2.     Limitations and No Waiver. This protocol provides a general framework for the production of ESI and paper documents on a going forward basis. The Parties and their attorneys do not intend by this protocol to waive their rights to the attorney work-product privilege. All Parties preserve their attorney client privileges and other privileges and there is no intent by the protocol, or the production of documents pursuant to the protocol, to in any way waive or weaken these privileges.

**B.     Electronically stored information**

1.     Except as described in paragraph B.4., the Parties will produce ESI in TIFF format, with accompanying metadata and text as provided below.

2.     "Native Format" means the format in which the item of ESI was originally created. For example, the native format of a Microsoft Office Word document is a .doc or a .docx file. Where documents are produced in Native Format,

native files will be produced in their complete original condition with the exception that files may be renamed for litigation purposes, and alterations in metadata incidental to production may occur (with the original file name and metadata for agreed upon fields provided in a load file), and encrypted files may be produced in unencrypted form.

3. The load files will include an image load file in Opticon format as well as a data (.dat) file with the created data and metadata fields identified below on the document level to the extent available.

| Field | Definition | Doc Type |
|---|---|---|
| SOURCE | Name of party producing the document | All |
| CUSTODIAN | Name of person or other data source (non-human) from where documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.* | All |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | End Bates Number (production number) | All |

| Field | Definition | Doc Type |
|---|---|---|
| PGCOUNT | Number of pages in the document | All |
| FILESIZE | File Size | All |
| APPLICAT | Commonly associated application for the specified file type. | All |
| FILEPATH | Original file/path of the location where the item resided at the time of preservation. This should include location, file name, and file source extension. | Edocs |
| NATIVEFILELINK | For documents provided in native format only | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| MSGID | Email system identifier assigned by the host email system. This value is extracted from parent message during processing | E-mail |

| Field | Definition | Doc Type |
|---|---|---|
| PST/OST filename | PST/OST filename | E-mail |
| Folder | Folder location of the e-mail within the PST/OST | E-mail |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| BEGATTACH | First Bates number of family range (i.e. Bates number of the first page of the parent e-mail) | E-mail |
| ENDATTACH | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | E-mail |
| ATTACHCOUNT | Number of attachments to an e-mail | E-mail |

| Field | Definition | Doc Type |
|---|---|---|
| DATESENT (mm/dd/yyyy hh.mm.ss) | Date Sent | E-mail |
| DATERCVD (mm/dd/yyyy hh.mm.ss) | Date Received | E-mail |
| E-MAILDATSORT (mrn/dd/yyyy hh.mm.ss) | Sent Date of the parent e-mail (physically top e-mail in a chain) | E-mail |
| E-mail Outlook Type | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task | Outlook or similar system data |
| HASHVALUE | MD5 has value for Edocs, e-attachments and e-mail, computed at the time of processing. | All |
| TITLE | Title provided by user within the document | Edocs |

| Field | Definition | Doc Type |
|---|---|---|
| AUTHOR | Creator of a document | Edocs |
| DATECRTD (mrn/dd/yyyy hh.mm.ss) | Creation Date | Edocs |
| LAST MODIFIED BY | Last person who modified (saved) a document | Edocs |
| LASTMODD (mrn/dd/yyyy hh.mm.ss) | Last Modified Date | Edocs |
| DocumentType | Descriptor for the type of document. **"E-document"** for electronic documents not attached to e-mails; **"E-mail"** for all e-mails; **"E-attachment"** for files that were attachments to e-mails; and **"Physical"** for hard copy physical documents that have been scanned and converted to an electronic image. | All |

| Field | Definition | Doc Type |
|---|---|---|
| Importance | High Importance – indicates Priority E-mail message. | E-mail |
| Redacted | Descriptor for documents that have been redacted. "Yes" for documents that have been redacted. | All |
| ProdVol | Name of media that data was produced on. | All |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable protective order or stipulation. | All |
| Duplicates | If the documents of a particular custodian or data source have been de-duplicated per this protocol, a list of the custodians in whose files the duplicates appear and a list of the file paths for the de-duplicated documents will be provided. The custodian list and the file path list for duplicates will be provided in the custodian and filepath fields respectively. | All |

4. Production of TIFFs for Native Format Documents which are impractical to convert to TIFF. The following ESI types do not lend themselves well to the TIFF format: spreadsheet files (e.g. Excel files); presentation files (e.g. PowerPoint files); audio and video formats such as mp3s, wavs, and megs. These ESI file types will be produced in native format. A placeholder TIFF, bearing the legend "This document has been produced natively," shall be produced for such documents; these placeholders will be Bates Numbered in the same way as any other TIFF and the Bates Number of the single page shall be used as the BEGINBATES and ENDBATES of the associated document.

5. ESI which is impractical to produce in either TIFF or Native Format. The parties acknowledge certain categories of ESI are structurally complex and do not lend themselves to production as native format documents with links to a litigation database, or to production in TIFF format. For example, in some instances renaming or linking a native document comprised of subparts will render the document unusable. Other examples include databases (such as MS Access, Oracle and Microsoft SQL server). If the responding party believes it possesses responsive ESI in this category, counsel should initiate a meet and confer to address production issues.

C. **Documents existing only in paper format**

1. Documents existing only in paper form shall be scanned and produced as TIFFs.

2.      Unitization. Unitization and the parent / child relationships of such documents shall be preserved and provided in the load files.

3.      Metadata. Custodian information, the document's redaction status, and the document's confidentiality status shall be provided by the Producing Party in a load file.

4.      OCR. High-quality multipage OCR text shall be provided for each paper document. Page breaks shall be preserved within the OCR text. OCR text files shall match the respective bates number of its document, with a file extension of "txt."

**D.    Additional production specifications.**

1.      TIFFs. All TIFFs produced by any party in this matter will be single page Group IV TIFF format, 300 dpi quality or better. If a file is unreadable at the quality level produced, the producing party will honor reasonable requests for production of a higher-quality version of the document. Image file names will be identical to the corresponding bates numbered images, with a ".tif" file extension. TIFF versions of ESI produced pursuant to this section shall include visible and legible images of comments and hidden text contained within the underlying ESI.

2.      Bates Numbers.

　　　a.      All bates numbers will consist of a three letter Alpha Prefix, followed immediately by an 8 digit numeric, such as AAA########. There must be no spaces in the bates number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits. Plaintiffs shall

employ different bates prefixes for documents produced by different individual Plaintiffs.

    b.    The producing party will brand all TIFF images in the lower right-hand corner with its corresponding bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to this position as possible while preserving the underlying image.

3.    Confidentiality treatment. The parties will be entering into a confidentiality stipulation in this matter.

    a.    The confidentiality designation for any item will be provided with the created data for the item, in the field entitled "Confidentiality Treatment." For items with no confidentiality designation, the field will be left blank.

    b.    The producing party will brand any confidentiality endorsements in a corner of any TIFF images representing the produced item. Those endorsements must be in a consistent font type and size, and must not obscure any part of the underlying image or Bates number.

4.    Redaction.

    a.    Redacted items will be produced as TIFFs, with the exception that for redacted Excel (.xls or .xlsx) files that are impractical to convert to TIFF, the producing party may produce a modified version of the document in

native format.  Where such a modified document is produced, metadata provided in the load file shall be the data associated with the original document.  To the extent the text is searchable in the native format, the producing party must provide searchable text for those portions of the document which have not been redacted.

  b. Each TIFF for a redacted item will bear a label identifying the area of the document which was redacted.

  c. For redacted items which were originally ESI, all metadata will be provided that is not itself subject to redaction.

  d. Redacted documents shall be identified as such in the load file provided with the production.  A document's status as redacted does not relieve the producing party from providing all of the metadata required herein, except to the extent that metadata may itself be subject to redaction.

  5. De-duplication. The parties agree the producing party may de-duplicate by MD5 hash within the materials of a unique custodian or data source or globally across custodians or data sources. The producing party will maintain references to all removed duplicate files and shall provide the names of all original custodians and a list of the file paths for the de-duplicated documents, to the extent that such custodians and file paths have been identified.  The custodian list and the file path list may be provided in separate fields.  If the duplicates are e-mails, the producing party must detail the process of creating the data, e.g., the separator, if

any, and names and order of concatenated fields, upon which the MD5 hash was calculated to a sufficient degree so the receiving party can calculate the hash itself.

6. Color. Documents produced as TIFF images may be produced in black and white in the first instance. If an original document contains color and the color is necessary to decipher the meaning, context, or content of the document, the producing party shall honor reasonable requests for production of the document in a color TIFF format.

7. Load Files.

    a. Plaintiffs. The load file format for productions to the Plaintiffs shall be in .dat format.

    b. Defendants. The load file format for productions to the Defendants shall be in .dat format.

8. Encrypted or password-protected ESI. For any ESI which exists in encrypted format or is password-protected, the producing party will make reasonable efforts to produce the document in an unencrypted form where possible (either TIFF or native format).

9. Production media. The producing party will use the appropriate electronic media (CD, DVD or hard drive) for its ESI production, and will cooperate in good faith to use the highest-capacity available media to minimize associated overhead. The producing party will label the physical media with the producing party, production date, media volume name, and document number range. Any replacement Production Media will cross-reference the original Production Media,

clearly identify it is a replacement and cross-reference the Bates Number range which is being replaced.

      10.    Write protection and preservation. All computer media capable of write protection should be write-protected before production.

**E.    Timing**

      1.    The Parties will use their reasonable efforts to produce ESI in a timely manner consistent with the Court's discovery schedule.

      2.    The Parties will produce ESI on a rolling basis.

**F.    General provisions**

      1.    Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data.

      2.    Should any Party subsequently determine it cannot in good faith proceed as required by this protocol; the Parties will meet and confer to resolve any dispute before seeking Court intervention.

      3.    The Parties agree e-discovery will be conducted in phases.

**IT IS SO ORDERED.**

Dated: January 29, 2013

                                                               RUBEN B. BROOKS
                                                              United States Magistrate Judge