# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY HORVATH, JEREMY FORSYTHE, RONALD JOHNSON, and FRED MONTGOMERY, individually and on behalf of others similarly situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>LG ELECTRONICS MOBILECOMM U.S.A., INC., a California corporation,<br><br>                              Defendant. | CASE NO. 3:11-cv-1576-H (RBB)<br><br>**ORDER PRELIMINARILY APPROVING SETTLEMENT AGREEMENT** |

On October 3, 2013, Plaintiffs Terry Horvath, Jeremy Forsythe, Ronald Johnson, and Fred Montgomery ("Plaintiffs") filed an unopposed motion for preliminary approval of a class settlement. (Doc. No. 89.)  The Court held a hearing on November 4, 2013 at 10:30 am.  John A. Lowther appeared for Plaintiffs.  James Donato appeared for Defendant LG Electronics Mobilecomm U.S.A., Inc. ("LG Electronics").

## I.  Background

### A.  The Facts

On July 18, 2011, Plaintiff Horvath filed a class action complaint for damages and equitable relief against LG Electronics. (Doc. No. 1.)  On November 17, 2011, Plaintiffs Horvath, Forsythe, Johnson, and Montgomery filed a first amended class

action complaint against LG Electronics alleging: (1) breach of express warranty; (2) breach of implied warranty; (3) violations of Song-Beverly Warranty Act, California Civil Code §§ 1792, *et seq*.; (4) violations of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.; (5) violations of the California Unfair Competition Law; (6) violations of the Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq*.; and (7) common counts of assumpsit and quasi-contract.  (Doc. No. 23, FAC.)

Plaintiffs brought this action against LG Electronics on behalf of other persons in California or the United States who purchased an LG-P999 G2X mobile phone ("G2X phone").  (FAC at ¶ 1.)  Plaintiffs alleged that an inherent design or manufacturing defect in the G2X phone causes the phones to randomly freeze, crash, reset or power-off completely, rendering the phones inoperable and unfit for their intended use and purpose.  (Id. at ¶ 2.)  Plaintiffs also alleged that the G2X phones suffer from an inherent design or manufacturing defect causing its screen to "bleed," or leak backlight from the edges of the phone's screen.  (Id. at ¶ 3.)  Plaintiffs alleged that after Defendant released the G2X phones, consumers began to contact Defendant and its authorized agents and resellers to complain about the defects and have posted these complaints about the power-off defect and screen-bleed defects on Internet websites, including LG Electronics' own website.  (Id. at ¶ 4.)

### B.    The Settlement

Plaintiffs report that they reached a settlement agreement with LG Electronics after lengthy arm's length negotiations.  (Doc. No. 89-1 at 8.)  Its essential provisions are as follows:

(1)    Before the end of the Claims Period, a claimant may submit a claim by either mailing or electronically submitting a Claim Form declaring the claimant was the purchaser of an eligible LG G2x P999 mobile phone, and setting forth or confirming the claimant's name, address, and telephone number, as well as the approximate date of purchase of the G2x Phone and a sworn verification that the claimant experienced either or both of the two defects in question (the Shutdown Defect and the Screen-

Bleed Defect) at any time between April 15, 2011 and prior to entry of the

Preliminary Approval Order, and experienced similar problems after notifying either

T-Mobile or LG Electronics.  (Doc. No. 89-1 at 12.)

(2)     Each claimant who submits a valid Claim Form is entitled to a $19.00 cash

payment.  Such payments are not subject to proration, nor is there any cap on the

total number of claims.  (Id.)

(3)     Settlement Class members who received multiple replacement G2x Phones

and continued to experience one of the alleged defects with the replacement phone

after notifying either LG Electronics or T-Mobile may submit a claim for each

replacement phone.  (Id. at 12-13.)

(4)     LG Electronics will separately pay all costs of the initial Settlement Class

Notice and all costs of Settlement administration and distribution of the Settlement

proceeds.  (Id. at 13.)

(5)     Class Counsel will apply to the Court for an award and reimbursement of

their attorneys' fees and expenses for prosecuting the action.  Class Counsel will

also seek a service payment for time and expenses to the representative plaintiffs,

not to exceed $2,500 per plaintiff.  Defendant reserves the right to challenge the

amount of attorneys' fees and costs Class Counsel may request.  (Id.)

## II.     Legal Standard

Federal Rule of Civil Procedure requires the Court to determine whether a

proposed class action settlement is "fair, adequate and reasonable," and not a

product of collusion.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.

1998).  To make this determination, the Court must consider a number of factors,

including:

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

1   Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003) (citations omitted).  In

2   determining whether a proposed settlement should be approved, the Ninth Circuit

3   has a "strong judicial policy that favors settlement, particularly where complex class

4   action litigation is concerned."  In re Heritage Bond Litigation, 2005 WL 1594403,

5   at *2 (C.D. Cal. June 10, 2005) (citing Class Plaintiffs v. Seattle, 955 F.2d 1268,

6   1276 (9th Cir. 1992)).

7         Court approval involves a two-step process in which the Court first

8   determines whether a proposed class action settlement deserves preliminary

9   approval and then, after notice is given to class members, whether final approval is

10  warranted.  Federal Judicial Center, Manual for Complex Litigation § 21.632 (4th

11  ed. 2004).  Given that some of the noted factors cannot be fully assessed until the

12  Court conducts the final approval hearing, "a full fairness analysis is unnecessary at

13  this stage."  Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation

14  omitted).  Rather, at the preliminary approval stage the Court need only review the

15  parties' proposed settlement to determine whether it is within the permissible "range

16  of possible judicial approval" and, thus, whether the notice to the class and the

17  scheduling of the formal fairness hearing is appropriate.  See William B.

18  Rubenstein, et. al., 2 Newberg on Class Actions § 11:25 (4th ed. & Supp. 2002)

19  (citations omitted); see also Wright v. Linkus Enterprises, Inc., 259 F.R.D. 468, 473

20  (E.D. Cal. 2009); Alberto, 252 F.R.D. at 666.

21        The Ninth Circuit favors deference to the "private consensual decision of

22  the [settling] parties," particularly where the parties are represented by experienced

23  counsel and negotiation has been facilitated by a neutral party–in this instance, the

24  magistrate judge.  See Rodriguez v. West Publishing Corp., 563 F.3d 948, 965 (9th

25  Cir. 2009).  "In reality, parties, counsel, mediators, and district judges naturally

26  arrive at a reasonable range for settlements by considering the likelihood of a

27  plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it,

28  discounted to present value."  Id.

1    **III.    Discussion**

2           *A. Preliminary Approval of the Settlement*

3           After reviewing the settlement for overall fairness according to the above

4    factors, the Court finds that preliminary approval is appropriate.  The disputed

5    factual and legal issues would be costly and complex to resolve at trial.  Both parties

6    have considered the uncertainty and risk of the outcome of future litigation, the

7    burdens of proof for liability, as well as the general difficulties and delays of

8    litigation.  (Doc. No. 89-2 at 7.)  These considerations led the parties to conclude

9    that a timely settlement would be best for all involved parties.  See Linney v.

10   Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very

11   uncertainty of outcome in litigation and avoidance of wasteful and expensive

12   litigation that induce consensual settlement.")

13          The proposed settlement is the result of lengthy, arm's-length negotiations,

14   including mediation, settlement conferences, and failed attempts at settlement.

15   (Doc. No. 89-1 at 8-11.)  The parties have engaged in extensive discovery and are

16   familiar with each other's claims, defenses, and factual and legal contentions, as

17   well as each side's respective strengths and weaknesses.  (Doc. No. 89-2 at 3, 7.)

18   The settlement represents a substantial recovery for the class and a well crafted

19   compromise of the divergent positions of the parties in relation to penalties.  In

20   addition, there is no evidence that the settlement, the award of attorney's fees, or the

21   enhancement award for Plaintiff was the result of collusion between the parties.

22          The Court therefore preliminarily approves the proposed class settlement.

23   The Court, however, reserves judgment on the reasonableness of the attorneys' fees

24   and enhancement award for the final approval hearing.

25          *B. Class Counsel and Class Representative*

26          Traditionally, the choice of counsel has been left to the parties, "whether they

27   sue in their individual capacities or as class representatives."  In re Cavanaugh, 306

28   F.3d 726, 734 (9th Cir. 2002) (citations omitted).  In determining whether Plaintiff's

counsel is adequate, a court must consider "(I) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R Civ. P. 23(g)(1)(A).

Here, the law firm Doyle Lowther LLP is experienced in class action litigation and familiar with the factual and legal issues raised by this litigation. (Doc. No. 89-2 at ¶ 28.e.)  There is no indication that the settlement is collusive. The parties engaged in substantial negotiations before both a mediator and Magistrate Judge Brooks before agreeing to the final settlement terms, and counsel considered numerous relevant factors in agreeing to the Settlement, including the results of motion practice and discovery.  (Id. at ¶¶ 8-19.)

*C. Nature and Method of Class Notice*

The class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).  In addition, the class notice must satisfy the content requirements of Federal Rule of Civil Procedure 23(c)(2)(B), which provides that the notice must clearly and concisely state in plain, easily understood language:

> (I) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(e) requires generally the same.

Here, the proposed method for notice is as follows:

(1)     The claims administrator will create a settlement website at the domain www.LGPhoneSettlement.com, or such other domain as the Parties agree, which will provide access to a claim form for online submission, downloadable copies of

the Long Form and Short Form Notices, Settlement Agreement, Claim Form, a list of Frequently Asked Questions, and other relevant settlement documents.  The claims administrator will also establish a dedicated, toll-free telephone number that Settlement Class Members can call to hear information regarding the settlement. (Doc. No. 89-1 at 21.)

(2)    The Short Form Notice and Claim Form will be sent by first-class mail in the form of a double-sided postcard to the last known mailing address of all persons who purchased G2x Phones to inform them about the Settlement's terms, their rights in connection with the Settlement, and the date of the Fairness Hearing.  This Short Form Notice also provides a link to the settlement website containing detailed information about the action and the settlement.  Draft versions of the Short Form Notice and Claim Form are attached to the Settlement Agreement.  (Id.)

The Court finds that this method of notifying unnamed class members of the proposed settlement is reasonably calculated to appropriately apprise them of their rights.

## D. Setting Final Approval Hearing

Finally, the Court sets the Final Approval Hearing for January 13, 2014 at 10:30 am.  Plaintiff must file a motion for final approval of the settlement, as well as any motions for fees, enhancements, and costs, on or before December 16, 2013.

## CONCLUSION

Based on the foregoing, the Court orders the following:

(1) The Court grants Plaintiff's request to have Plaintiffs Terry Horvath, Jeremy Forsythe, Ronald Johnson, and Fred Montgomery appointed as representatives of the settlement class;

(2) The Court grants Plaintiff's request for preliminary approval of the proposed settlement;

(3) The Court grants Plaintiff's request to have the law firm of Doyle Lowther LLP appointed class counsel;

10cv1622

1   (4) The Court approves the form and manner of giving notice of the proposed

2   settlement to the class members; and

3   (5) The Court sets the Final Approval Hearing on the proposed settlement for

4   January 13, 2014, at 10:30 am, before the Hon. Marilyn L. Huff.  Plaintiff must file

5   a motion for final approval of the settlement, as well as any motions for fees,

6   enhancements, and costs, on or before December 16, 2013.

7   (6) Any objections to the settlement or the motions for fees, enhancements, or

8   costs, must be filed on or before December 30, 2013.  Any reply must be filed on or

9   before January 6, 2014.

10   **IT IS SO ORDERED**.

11   DATED: November 4, 2013

12

13   _____

14   MARILYN L. HUFF, District Judge
    UNITED STATES DISTRICT COURT

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10cv1622