1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| TERRY HORVATH, JEREMY FORSYTHE, RONALD JOHNSON, and FRED MONTGOMERY, individually and on behalf of all others similarly situated, | CASE NO. 3:11-cv-01576-H (RBB) |
| Plaintiffs, | **ORDER APPROVING FINAL SETTLEMENT AGREEMENT AND JUDGMENT** |
| vs. | |
| LG ELECTRONICS MOBILECOMM U.S.A., INC., a California corporation, | |
| Defendant. | |

On December 16, 2013, the Plaintiffs Terry Horvath, Jeremy Forsythe, Ronald Johnson, and Fred Montgomery ("Plaintiffs") filed a Motion for Final Approval of Settlement of this class action lawsuit.  (Doc. No. 93.)  The Court held a hearing on January 13, 2014 at 10:30 am.  William James Doyle, John A. Lowther, Alan McQuarri Mansfield, and Thomas Glynn appeared for Plaintiffs.  James Donato and Emily V. Griffen appeared for Defendant LG Electronics Mobilecomm U.S.A., Inc. ("LG Electronics").  For the following reasons, the Court grants Plaintiffs' motion and approves the final settlement agreement.

11cv1576

1

## I. Background

2

### A. The Facts

3 On July 18, 2011, Plaintiff Horvath filed a class action complaint for damages
4 and equitable relief against LG Electronics. (Doc. No. 1.) On November 17, 2011,
5 Plaintiffs Horvath, Forsythe, Johnson, and Montgomery filed a first amended class
6 action complaint against LG Electronics alleging: (1) breach of express warranty; (2)
7 breach of implied warranty; (3) violations of Song-Beverly Warranty Act, California
8 Civil Code §§ 1792, *et seq*.; (4) violations of Magnuson-Moss Warranty Act, 15 U.S.C.
9 §§ 2301, *et seq*.; (5) violations of the California Unfair Competition Law; (6) violations
10 of the Consumers Legal Remedies Act, California Civil Code §§ 1750 *et seq*.; and (7)
11 common counts of assumpsit and quasi-contract. (Doc. No. 23, FAC.)

12 Plaintiffs brought this action against LG Electronics on behalf of other persons
13 in California or the United States who purchased an LG-P999 G2X mobile phone
14 ("G2X phone"). (FAC at ¶ 1.) Plaintiffs alleged that an inherent design or
15 manufacturing defect in the G2X phone causes the phones to randomly freeze, crash,
16 reset or power-off completely, rendering the phones inoperable and unfit for their
17 intended use and purpose. (Id. at ¶ 2.) Plaintiffs also alleged that the G2X phones
18 suffer from an inherent design or manufacturing defect causing its screen to "bleed,"
19 or leak backlight from the edges of the phone's screen. (Id. at ¶ 3.) Plaintiffs alleged
20 that after Defendant released the G2X phones, consumers began to contact Defendant
21 and its authorized agents and resellers to complain about the defects and have posted
22 these complaints about the power-off defect and screen-bleed defects on Internet
23 websites, including LG Electronics' own website. (Id. at ¶ 4.)

24

### B. The Settlement

25 Plaintiffs report that they reached a settlement agreement with LG Electronics
26 after lengthy arm's length negotiations. (Doc. No. 89-1 at 8.) Its essential
27 provisions are as follows:

28 //

(1)     Before the end of the Claims Period, a claimant may submit a claim by either mailing or electronically submitting a Claim Form declaring the claimant was the purchaser of an eligible LG G2x P999 mobile phone, and setting forth or confirming the claimant's name, address, and telephone number, as well as the approximate date of purchase of the G2x Phone and a sworn verification that the claimant experienced either or both of the two defects in question (the Shutdown Defect and the Screen-Bleed Defect) at any time between April 15, 2011 and prior to entry of the Preliminary Approval Order, and experienced similar problems after notifying either T-Mobile or LG Electronics.  (Doc. No. 89-1 at 12.)

(2)     Each claimant who submits a valid Claim Form is entitled to a $19.00 cash payment.  Such payments are not subject to proration, nor is there any cap on the total number of claims.  (Id.)

(3)     Settlement Class members who received multiple replacement G2x Phones and continued to experience one of the alleged defects with the replacement phone after notifying either LG Electronics or T-Mobile may submit a claim for each replacement phone.  (Id. at 12-13.)

(4)     LG Electronics will separately pay all costs of the initial Settlement Class Notice and all costs of Settlement administration and distribution of the Settlement proceeds.  (Id. at 13.)

(5)     The Parties agreed that Class Counsel would apply to the Court for an award and reimbursement of their attorneys' fees and expenses.  Defendant reserved the right to challenge the amount of attorneys' fees and costs. (Id.)

   *C.    Preliminary Approval*

       On November 4, 2013, after the parties reached a settlement agreement, the Court held a hearing on Plaintiffs' Motion for Preliminary Settlement Approval. (Doc. No. 92 at 1.)  The Court granted preliminary approval of the settlement and provisionally certified a plaintiff settlement class under Federal Rule of Civil Procedure 23(b)(3).  (Id.)  The Court also approved the parties' proposed notice to

1   the settlement class, approved Kurtzman Carson Consultants as the claims

2   administrator to supervise and administer the notice plans, and approved Doyle

3   Lowther LLP as class counsel.  (Id. at 5-7.)

4           D.    Objections

5           Two members of the provisional class have filed objections to the settlement

6   agreement, both addressing the adequacy of the recovery for absent class members.

7   On December 17, 2013, Denise Leslie Franco filed an objection stating that she

8   missed an important meeting and lost about $700 as direct results of defects in her

9   G2X phone.  (Doc. No. 94 at 1-2.)  On December 27, 2013, Michelle Goode filed an

10  objection arguing that class members should receive a full refund for the allegedly

11  defective phone.  (Doc. No. 95.)

12  **II.    Legal Standard**

13          Federal Rule of Civil Procedure requires the Court to determine whether a

14  proposed class action settlement is "fair, adequate and reasonable," and not a

15  product of collusion.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir.

16  1998).  To make this determination, the Court should consider a number of factors,

17  such as:

18          [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and
            likely duration of further litigation; [3] the risk of maintaining class action
19          status throughout the trial; [4] the amount offered in settlement; [5] the extent
            of discovery completed, and the stage of the proceedings; [6] the experience
20          and views of counsel; [7] the presence of a governmental participant; and [8]
            the reaction of the class members to the proposed settlement.
21

22  Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003) (citations omitted).  In

23  determining whether a proposed settlement should be approved, the Ninth Circuit

24  has a "strong judicial policy that favors settlement, particularly where complex class

25  action litigation is concerned."  In re Heritage Bond Litigation, 2005 WL 1594403,

26  at *2 (C.D. Cal. June 10, 2005) (citing Class Plaintiffs v. Seattle, 955 F.2d 1268,

27  1276 (9th Cir. 1992)).  The Ninth Circuit favors deference to the "private

28  consensual decision of the [settling] parties," particularly where the parties are

represented by experienced counsel and negotiation has been facilitated by a neutral party–in this instance, a private mediator and a magistrate judge.  See Rodriguez v. West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009).  "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value."  Id.

**III.   Discussion**

> *A.    The Strength of the Plaintiffs' Case and Risk of Further Litigation*

The strength of the Plaintiffs' case and the risk of further litigation are facts that courts consider in deciding whether to approve a class action settlement agreement.  Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003).  Here, the Plaintiffs asserted multiple legal claims that survived Defendants' motion to dismiss. (Doc. No. 20.)  Yet the factual issues inherent to these claims would have presented risks had the parties proceeded to trial.  (Id.; Doc. No. 93-1 at 13.)  Furthermore, the Court had not yet certified the class when the parties reached their preliminary settlement, meaning that further litigation would also have presented the risk that the class would not be certified.  (Doc. No. 93-1 at 13.)

> *B.    The Amount Offered in Settlement*

In deciding whether to approve a class action settlement, courts also consider the amount offered in the settlement.  Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003).  The settlement agreement entitles absent class members in this case to $19 in cash for each defective phone they purchased.  (Doc. No. 93-1 at 5.)  The Plaintiffs suggest that the absent class members approve of the settlement amount based on the fact that many have already filed claim forms.  (Doc. No. 93-7 at 5.)

> *C.    The Stage of the Proceedings*

Courts also consider the stage of the proceedings in deciding whether to approve a class action settlement agreement.  Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003).  Here, the parties have engaged in extensive discovery and

settlement negotiations (Doc. No. 93-4 at 4-5), and the Plaintiffs' claims have survived a motion to dismiss (Doc. No. 20), and the Court preliminarily approved the class action settlement (Doc. No. 92).

> D.     The Reactions of the Class Members to the Proposed Settlement

In addition, the reactions of the class members to the proposed settlement are a factor in whether to approve a class action settlement agreement. Staton v. Boeing, 327 F.3d 938, 959 (9th Cir. 2003). Two class members have objected to the settlement. (Doc. Nos. 94, 95.) But the parties rightly point out that the objectors' complaints primarily stem from their interactions with T-Mobile, which is not a party to this lawsuit. (Doc. No. 98-1 at 2, 5.)

After considering the merits of the proposed class action settlement in the context of the complexities and risks that further litigation would have posed, the Court approves the parties' final settlement agreement.

## IV.    Attorneys' Fees and Costs

California law allows for an award of attorneys' fees in consumer class action cases. See Consumers Legal Remedies Act, Cal. Civ. §§ 1750 et seq.; Cal. Code Civ. Proc. § 1021.5. Class Counsel requests a collective award of $1,976,141.10 in attorneys' fees and $30,166.01 in reimbursement of expenses incurred during the litigation. (Doc. No. 93-2 at 10.) This figure is based on 2,916.5 hours of legal work by Doyle Lowther (id. at 17); 201.3 hours of legal work by the Consumer Law group (Doc. No. 93-5 at 4); and 164.3 hours of legal work by Thomas Glynn (Doc. No. 93-6 at 4.). Class Counsel requests a lodestar multiplier of 1.2 in order to fully compensate counsel for the complexities of the subject matter, for the high degree of risk involved in litigating the case, and for an excellent result counsel secured for the class. (Id. at 21.)

LG Electronics argues that Class Counsel's request is unreasonable. (Doc. No. 96.) It points out that Class Counsel's documentation does not contain detailed contemporaneous time records. (Id. at 6.) It also argues that duplication of work

1    and inefficiencies inflate Class Counsel's lodestar figure.  (Id.)  LG Electronics

2    argues that the Court should either award fees of no more than $450,000 or direct

3    Class Counsel to submit actual time records.  In response, Plaintiffs point to a

4    detailed declaration and, at oral argument, agreed to withdraw its request for a

5    lodestar multiplier.

6         The Court grants in part and denies in part the requested attorneys' fees.  In

7    Plaintiffs' favor, the parties litigated this case for several years and faced multiple

8    different defense firms.  Here, the Defendants point out several deficiencies in

9    Plaintiffs' fee request, as detailed in LG Electronics' Opposition.  (See Doc. No. 96.)

10        The Ninth Circuit requires special scrutiny of billing claims where, as here,

11   multiple law firms and lawyers are involved in litigating a case.  See, e.g.,

12   Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1286 (9th Cir. 2004)

13   ("[C]ourts ought to examine with skepticism claims that several lawyers were

14   needed to perform a task, and should deny compensation for such needless

15   duplication as when three lawyers appear for a hearing when one would do."); see

16   also Stonebrae, L.P. v. Toll Bros., Inc., No. C-08-0221, 2011 WL 1334444, at *12

17   (N.D. Cal. Apr. 7, 2011) aff'd, 521 F. App'x 592 (9th Cir. 2013) ("[C]ounsel seeking

18   fee awards bear the risk that the lodestar will be subject to scrutiny and possible

19   reduction due to unreasonable inefficiencies and duplicative efforts engendered by

20   multiple counsel and law firms.").

21        Courts have reduced the lodestar where plaintiffs fail to provide adequate

22   justification for the fact that numerous attorneys seek attorneys' fees for a matter.

23   See Doyle Lowther Decl., ¶¶ 36, 51, 94, 99; cf. Cruz v. Alhambra Sch. Dist., 601 F.

24   Supp. 2d 1183, 1192 (C.D. Cal. 2009) (reducing lodestar because "Plaintiffs do not

25   provide an adequate explanation as to why it was necessary to have four attorneys . .

26   . attend the mediation); Garcia v. Resurgent Capital Servs., L.P., No. C-11-1253,

27   2012 WL 3778852, at *7 (N.D. Cal. Aug. 30, 2012) (reducing claimed hours

28   because attorney's presence at the depositions, hearings, and focus group meeting

cited by Defendants was not wholly necessary"); <u>Morris v. I.C. Sys., Inc.</u>, No. 06-2133, 2009 WL 1362594, at *5 (E.D. Pa. May 15, 2009) (finding it was "an unnecessary duplication of responsibilities and hours to have both [attorneys] attend the settlement conference . . . ." (citation omitted). Here, Plaintiffs claim attorneys' fees for thirteen timekeepers. (<u>See</u> Doc. No. 96 at 16.)

Previously, Class Counsel requested a 1.2 multiplier for a 20% increase on a three-firm lodestar of $1,646,784.25 -- a request to raise claimed attorneys' fees by $329,356.85, to a total of $1,976,141.10. Given Plaintiffs' agreement to withdraw the multiplier, the Court declines to upwardly adjust Class Counsel's lodestar calculation. Upward adjustments are limited to "rare, exceptional cases." <u>Chalmers v. City of Los Angeles</u>, 796 F.2d 1205, 1212 (9th Cir. 1986); <u>see also</u> <u>Wing v. Asarco</u>, 114 F.3d 986, 989 (9th Cir. 1997) ("The Supreme Court has recognized that in exceptional cases, quality of representation and exceptional results can, in fact, warrant an adjustment to the lodestar."); <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1139 (2001) ("A trial court should award a multiplier for exception representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. Otherwise, the fee award will result in unfair double counting and be unreasonable."). In this case, the relevant factors do not support an upward adjustment, much less one that increases attorneys' fees by nearly $330,000, given the present record before the Court and Plaintiffs' concession.

Accordingly, the Court in its discretion denies the lodestar multiplier of 1.2 that Class Counsel requests. Thus, the Court awards $1,646,784.25 in attorneys' fees. Additionally, the Court grants Class Counsel's request for $30,166.01 in reimbursement of expenses.

//

//

1

## V.      Conclusion

2           The Court grants Plaintiffs' Motion for Final Approval of Settlement.  The

3    Court awards Class Counsel $1,646,784.25 in attorneys' fees and $30,166.01 in

4    reimbursement of expenses.  The Court orders a final judgment be entered for

5    Plaintiffs.

6           **IT IS SO ORDERED**.

7    DATED: January 13, 2014

8

9    _____

MARILYN L. HUFF, District Judge
10   UNITED STATES DISTRICT COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28